E. B. Elliott Co. v. Commissioner.
E. B. Elliott Co. v. Commissioner
Docket No. 112243.
United States Tax Court
1943 Tax Ct. Memo LEXIS 199; 2 T.C.M. (CCH) 444; T.C.M. (RIA) 43341; July 10, 1943
*199 Douglas D. Felix, Esq., for the petitioner. J. Marvin Kelly, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This proceeding involves the redetermination of a deficiency of $14,678.86 in the income tax and $3,994.24 in excess profits tax for 1936. The sole issue is whether petitioner is entitled to a deduction of $40,000 on account of worthlessness of certain stock in the taxable year, petitioner having abandoned the other issue raised by the petition. Findings of Fact The petitioner, prior to its dissolution, was a Florida corporation engaged in the outdoor advertising business. It filed its return for 1936 with the collector for the District of Florida. In 1931 the petitioner entered into a reciprocal arrangement for exchange of business with the Compania E. B. Elliott de Cuba, a Cuban corporation, hereinafter referred to as the Cuban corporation, engaged in the outdoor advertising business in Cuba, and for the acquisition of its stock over a period of three years for cash advances and expenditures made by petitioner for the account of the Cuban corporation. Pursuant thereto, petitioner acquired, at a cost of $40,000, 400 shares of preferred *200 stock of the Cuban corporation for advances made and expenses paid up to June 30, 1934. At that time petitioner decided to make no more investments in the stock. In July 1935 a lessor of the Cuban corporation seized and acquired title to the furniture and fixtures of the corporation for failure to pay overdue office rent of about $350, which amount had accrued at the rate of $50 per month. Other property of the lessee was not subject to a lien for the rent and none was seized. The manager of the Cuban corporation, Frank Kolz, subsequently acquired title to the property in his name under an agreement with the landlord to pay the accrued rent at the rate of $75 a month. The money used to purchase the property from the landlord was furnished by the Cuban corporation. Thereafter until its dissolution in 1936, Kolz operated the Cuban corporation in his own name, from the same address formerly used by the corporation. The ordinary procedure of the Cuban corporation was to use its own money for the erection of advertising boards. At some undisclosed time in 1935 the Cuban corporation erected several advertising boards by the use of money paid in advance by the advertiser. At that time *201 the Cuban corporation had no funds to do the work. The income of the Cuban corporation began to decline in 1935 and continued in 1936, when it was inevitable that the corporation "would eventually completely fold up." It never paid a dividend. On July 31, 1935, it had no operating capital. The Cuban corporation was dissolved in October, 1936, at which time petitioner surrendered for cancellation the certificates it held for 400 shares of the corporation's stock, representing about 60 per cent of the outstanding preferred stock of the corporation. The replacement value of the assets of the Cuban corporation, consisting of a plant and advertising boards, at the time of its dissolution, was between $8,000 and $10,000. Its indebtedness at that time was less than $500. The assets then had no fair market value. Their realizable value was highly speculative, depending on the ownership of advertising contracts for their advantageous use. Petitioner received as a liquidating dividend on its preferred stock an undivided interest of about 60 per cent in the net assets of the corporation. No dividend was entered in petitioner's books, for the reason that the assets were considered worthless, *202 and that nothing would ever be recovered from them. After the dissolution of the Cuban corporation the advertising boards were delivered to Kolz to get what he could out of them. They are now being used by an individual engaged in the sign business. The petitioner reported a net loss of $13,629.23 in its return for 1935 and gross income of $118,836.49 in its return for 1936. Opinion The petitioner claimed a deduction of $40,000 in its return for 1936 on account of an alleged loss on the 400 shares of stock it held of the Cuban corporation. The respondent disallowed the deduction upon the ground that the stock became worthless prior to 1936. Upon brief respondent admits that the stock had a cost of $40,000 and that it was worthless in 1936, and contends that it became worthless in 1935. The petitioner admits that loss sustained on account of worthlessness of stock must be taken in the year in which the stock becomes worthless and may not be deferred until the year in which, as here, the corporation is dissolved and the petitioner receives a liquidating dividend upon cancellation of its stock. It contends that the stock in question did not become worthless until 1936, and since *203 the stock was surrendered in connection with the dissolution of the Cuban corporation, and no cash or property of a fair market value was received in exchange for the stock, loss was sustained under section 115(c) of the Revenue Act of 1936 in an amount equal to the cost of the stock. Thus both parties agree that the stock was worthless in 1936. The difference between them is when it became worthless. The petitioner had the burden of overcoming the determination of the respondent that the stock became worthless prior to 1936. ; ; . The real question is whether the stock became worthless in 1935. A loss occurs when it reasonably appears that the stock has become worthless. ; . It "calls for a practical, not a legal test," . The evidence before *204 us supports, rather than overcomes, the determination of the respondent. The Cuban corporation never paid a dividend and it does not appear that it ever had net earnings. Petitioner knew in 1934 that the financial condition of the Cuban corporation was very weak. In that year it discontinued its plan of providing working capital through stock purchases. The books of the Cuban corporation were not available to petitioner for evidence of its actual financial condition at any time. It appears from testimony of petitioner's president, who was also president of the Cuban corporation, that it was in serious financial difficulties in 1935, due in part at least, to inability to obtain additional working capital from petitioner. In July 1935 the corporation's furniture and fixtures were seized because of failure to pay rent of $350 which had accrued at the rate of $50 a month. The inability of the corporation to meet such a small liability indicates serious financial distress at the time. The property was reacquired by small installment payments, but title, for reasons not explained by the record, was taken in the name of the corporation's manager, and thereafter the affairs of the corporation *205 were conducted in his name. At a meeting of the stockholders of the Cuban corporation in October, 1936, petitioner's president informed the stockholders that as of July 31, 1935, the corporation had practically ceased operations because it "had nothing at its disposal with which to continue business." Petitioner points out that the Cuban corporation still had its plant and business prospects in 1935 and was actually doing business in that year, having secured at least one new customer, and accordingly was a going concern with assets reasonably worth between $8,000 to $10,000. From this it argues that no identifiable event occurred in 1935 and that in that year the stock had potential value. We have said that "So long as corporate stock reasonably has a potential value, it can not be said that the taxpayer's investment therein has been lost." . There must be neither liquidating value nor potential value in stock before it can be said to be worthless. ; aff'd ; *206 The difficulty with the contention being made is that it is not supported by evidence. The assets referred to are the advertising boards on hand when the corporation was dissolved. These assets had no fair market value at that time, and we do not know their value, if anything, in 1935. The petitioner requested a finding that the realizable value of the assets was highly speculative, depending upon finding a purchaser with advertising for their use to advantage, and that no entry was made upon the petitioner's books of a liquidating dividend upon the dissolution in 1936 because the value of the assets was so speculative. Obviously, the speculative nature of the asset values applies in 1935 as well as 1936, since their nature was the same in both years. Therefore it appears that the petitioner faced with the burden of showing value in the stock prior to 1936, instead of proving affirmatively such value, agrees that value of assets was merely speculative. There is no evidence that the corporation had the advertising business necessary to advantageous use of the boards. In fact, the petitioner's president testified that without advertising matter, the sign boards were a liability, *207 rather than an asset, for it was necessary to keep them in condition and pay rent on the ground they occupied. Such a showing is plainly insufficient to meet the burden on the petitioner to show at least potential value prior to 1936. As to potential value too, a negative rather than an affirmative showing appears, for had the stock appeared to the stockholders to have potential value, the petitioner, which had formerly been willing to advance funds for the Cuban corporation and was holder of 60 per cent of its preferred stock, and whose president was the same as that of the Cuban corporation, would not reasonably have permitted the finances of the Cuban corporation to become so depleted as to cause the sale of the office furniture and fixtures for a rent bill of some $300, and the discontinuance of the use of the corporate name in business. Indeed, in the state of the record, we are unable to determine whether the Cuban corporation was, in fact, doing business after July 31, 1935. Thereafter the manager dealt in his own name, with title to the office furniture and fixtures in his name. Apparently, so far as the public knew, the Cuban corporation had ceased business, which obviously *208 would affect the value of its stock. As to whether the manager dealt for the stockholders, or for the corporation, the testimony is altogether contradictory. If, in addition to the discontinuance of the corporate name in business in 1935, such business was conducted for the stockholders as such, rather than for the corporation, it is apparent that there is strong indication of lack of value, either actual or potential, in the corporate stock. Neither is there evidence as to other assets and liabilities of the Cuban corporation in 1935, without which we can not determine whether the corporation was solvent or insolvent in that year, or in a better financial condition than upon liquidation, when its liabilities exceeded its assets. Neither did the petitioner offer any direct testimony on the potential value of the stock at the close of 1935. Aside from entering into one advertising contract, under which the advertiser advanced the cost of the advertising boards, we do not know what business, if any, the Cuban corporation transacted in 1935. The petitioner has failed to overcome the determination of the respondent that the stock became worthless in 1935. Accordingly, Decision will *209 be entered for the respondent.